IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|                        |   |                             |
|------------------------|---|-----------------------------|
|                        | : |                             |
| VINCENT OBRYN SANDERS  |   |                             |
|                        | : |                             |
| v.                     | : | Civil Action No. DKC 10-2079 |
|                        | : |                             |
| KATHLEEN GREEN, et al. |   |                             |
|                        | : |                             |

**MEMORANDUM OPINION**

Petitioner Vincent Obryn Sanders, proceeding *pro se*, commenced this action on July 29, 2010, by filing an application for a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2254, challenging his 2004 first-degree burglary conviction in the Circuit Court for Baltimore County, Maryland. (ECF No. 1). Respondents Kathleen Green, Warden of Eastern Correctional Institution, and Douglas F. Gansler, the Attorney General of the State of Maryland, opposed the application (ECF Nos. 5, 12) and Petitioner replied (ECF Nos. 7, 15). Having reviewed the parties' submissions and the relevant materials from the record, the court now rules, no hearing being deemed necessary. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts*; Local Rule 105.6; *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For the reasons that follow, the petition will be denied.

## I.   Background

By an indictment filed in or around December 2003, Petitioner was charged with first-degree burglary and related offenses.  The case proceeded to a one-day jury trial in the Circuit Court for Baltimore County on March 10, 2004.

At trial, David Jones, who resided at 6603 Kincheloe Avenue, Apt. C, in Woodlawn, Maryland, testified that, on December 2, 2003, at approximately 2:00 p.m., he was awakened from a nap by "some loud banging in the hallway" of his apartment building.  (ECF No. 12, Ex. 9, trial transcript, at 44).  He peered through the peephole of his apartment into the hallway, but saw nothing and returned to bed.  "About five or ten minutes later," Mr. Jones "heard some noise on the back patio" of the apartment next door, Apartment D, at which point he "looked out the back window [and] saw someone trying to gain entry through the patio sliding [glass] doors[.]"  (*Id.*).  Specifically, he saw a man "trying to jimm[y] a pipe or a bar in between the two doors, trying to pry them apart."  (*Id.* at 45).  Mr. Jones immediately called police.  While he was on the phone with the emergency operator, he "heard the window break on the sliding glass doors."  (*Id.*).

Officer Kimberly Rowe of the Baltimore County Police Department arrived on the scene within minutes.  She went to the back of the apartment complex "because the complainant advised

that the suspect went around the back," and observed that the sliding glass doors on the balcony of a second-floor apartment "had been shattered." (*Id.* at 62). She did not see anyone on the balcony, but heard "someone in[side] the apartment." (*Id.* at 63). Shortly thereafter, Petitioner "came out of the door onto the balcony and jumped" to the ground, "land[ing] on his stomach." (*Id.* at 63-64). Officer Rowe and another officer drew their service weapons and directed Petitioner to stay on the ground, but Petitioner "started to run." (*Id.* at 64). Following a brief chase, the officers apprehended Petitioner and placed him under arrest.[1] Incident to arrest, the officers recovered a screwdriver from Petitioner.

Lisa Williams lived in Apartment D, along with her two children. On December 2, 2003, at approximately 7:30 a.m., she left for work, making sure that all doors to the apartment were locked. Later that afternoon, she received a call from the property manager, advising that her apartment "was broken into." (*Id.* at 82). She returned home immediately, finding that her "patio door . . . [was] completely shattered"; her "CD player, [her] DVD, all of [her] VCR equipment was pulled out from [her]

---

[1] Mr. Jones observed the chase from his back door. He "called 9-1-1 back and told them that [the individual he saw the police apprehend] was the individual that [he] saw on the back patio." (*Id.* at 47).

3

entertainment center . . . [; and] some of the equipment was put into [a] plastic bag." (*Id.*).

Following the close of the State's case-in-chief,[2] the following discussion ensued during a conference regarding the counts that would be submitted to the jury:

> THE COURT:    All   right.    Now, [prosecutor], do I anticipate that the only count[] you're going to submit is first degree burglary?
>
> There are four counts[:] burglary first degree,  third  degree,  fourth  degree,  and theft under [$500].
>
> [PROSECUTOR]:  Your Honor, I would like to submit first degree and third degree and fourth degree.
>
> THE COURT:    Why?    Under   the facts of this case, how can it be anything other  than  first  degree?    How  could  it  be anything other?
>
> [PROSECUTOR]:  I    believe    it couldn't be anything other.
>
> THE COURT:    It's    either    not guilty or first degree.
>
> [PROSECUTOR]:  That's    what    I believe.   My  only  concern  is  should  the defense [closing] argument be something that there could have been another purpose for going  into  the  apartment  or  there  was  an accomplice  and  he  wasn't  the  one  that  went into the apartment --

---

[2] The  defense  case  consisted  solely  of  a stipulated  property  inventory  sheet,  which  reflected  that Petitioner  had  "$143  and  two  watches"  on  his  person  at  the  time of arrest.  (ECF No. 12-9, at 91).

THE COURT:    Or maybe a martian came down, and they broke down the door. It's absurd.

The elements of burglary are a breaking and entering and entry into somebody's dwelling, the purpose was theft.

[PROSECUTOR]:  I agree with you.

THE COURT:    And that the Defendant did it.

[PROSECUTOR]:  I agree with you. We'll submit first degree.

THE COURT:    I just don't see how it could be anything -- it's either first degree or it's nothing.  It seems to me with the evidence that's been introduced in this case --

[PROSECUTOR]:  I'm going to defer to Your Honor's judgment[;] that is fine. First degree is fine.

(*Id*. at 92-93).

The court then instructed the jury and the parties presented closing arguments, after which the court provided an additional instruction on the jury's deliberative process:

I'm going to then ask the other twelve jurors to go into the jury room and to begin your deliberations.

Now, how do you do that?  Well, there isn't any right way to do it, there's no wrong way to do it.  Some jurors go back and take a vote, and if they're all in agreement, they come right back.    Some jurors don't do it this way[;] they go back and spend time talking about things before they take a vote.  There's no right way or

wrong way to do it[.] [H]owever you folks
decide to do it is the way you should do it.

The only thing that would be wrong is
if you do to us what a jury did to us a few
months ago.  Now, as you can imagine, we all
talk about the cases.  We have a pretty good
idea of how short or long the jury is going
to be.  Now, we are not perfect, but after
you do this for 18 years, you know, you get
a pretty good idea.  We had a case where we
all agreed, total agreement, jury will be
out about 15 minutes.  When I went back to
speak to the jury, I spoke to the forelady,
I said, I see the case gave you some
trouble.  Oh, no, no, Judge, this was a
simple case.  I said, it must have given
somebody trouble because it took you three
hours and 45 minutes.  She said, oh, no, we
had a verdict in 20 minutes.  I said, I beg
your pardon?  She said, we had a verdict in
20 minutes, but we all talked about it and
we decided we needed to stay back another
three and a half hours to make it look good.

Folks, there's no making it look good.
As soon as the twelve of you agree, pick up
that phone and tell us you have a verdict so
that, quite frankly, you can go home and we
can go home.

With that being said, I now instruct
you to retire to your jury room.  We'll
await your call.

(*Id*. at 122-23).  Approximately twenty minutes later, the jury

returned a verdict finding Petitioner guilty of first-degree

burglary.

At his sentencing hearing, on April 9, 2004, Petitioner

advised the court that "[d]oing time is nothing for me, because

I've been doing it all my life," and that, if he continued using

6

drugs, "when I get back out, I [will] do the exact same thing I've been doing all of the time over [and] over again, go and break [the] law[.]" (ECF No. 12, Ex. 10, sentencing transcript, at 8-9). In sentencing Petitioner to the maximum punishment – a term of imprisonment of twenty years – the trial judge cited his extensive criminal history and his assertion that "as soon as he gets out, he's going to commit another crime, [that] it [does not] mean anything to him." (*Id.* at 10). The judge stated, "My goal is to keep him locked up so he's not out burglarizing other people's houses." (*Id.*).

On direct appeal to the Court of Special Appeals, Petitioner raised the following claims: (1) whether the trial court erred in submitting only the charge of first-degree burglary to the jury; (2) whether the trial court's comments to the jury regarding the "wrong way" to conduct deliberations improperly influenced the verdict; and (3) whether the trial court erred by refusing to ask a *voir dire* question requested by Petitioner. (ECF No. 5-2, at 2).[3] By an unreported opinion issued July 31, 2006, the intermediate appellate court affirmed the judgment of conviction and sentence. (ECF No. 5-4). The court found the first two issues raised by Petitioner were not

---

[3] During *voir dire*, defense counsel requested that the trial court ask the venire panel whether "anyone was on any victim rights committees or other committees like that," to which the judge replied, "I'm not going to ask that. I never do." (ECF No. 12-9, at 22).

preserved for its review, but, as to the jury instruction, it "caution[ed] the lower court that using this instruction runs the risk of communicating to the jury that the evidence calls for a quick conviction." (*Id*. at 6). The court additionally found no error with the trial court's refusal to submit the requested *voir dire* question, finding that counsel's question "was too broad, and did not focus on the issues particular to [Petitioner's] case." (*Id*. at 9 (internal marks and citation omitted)). Petitioner did not seek further review in the Court of Appeals of Maryland.

On February 12, 2007, he filed a *pro se* petition for post-conviction relief in the Circuit Court for Baltimore County, raising eighteen issues, including claims of ineffective assistance of trial and appellate counsel, prosecutorial misconduct, and error by the trial judge. (ECF No. 5-5). Each of those issues was considered by the circuit court at a hearing on April 10, 2008, during which Petitioner elected not to testify and presented no evidence. The court addressed each of the arguments raised in his petition, in turn, and denied post-conviction relief from the bench.

Petitioner submitted an application for leave to appeal to the Court of Special Appeals of Maryland, contending that: (1) his appellate counsel was ineffective for failing to raise a challenge to the trial court's reasonable doubt instruction; and

(2) that his trial counsel rendered ineffective assistance by (a) failing to object to the reasonable doubt instruction, (b) failing to ensure that lesser-included offenses were submitted to the jury, and (c) failing to object to the court's instruction on the jury's deliberations. (ECF No. 5-7). He argued that these errors, both individually and in their cumulative effect, deprived him of his Sixth Amendment right to effective representation. By an unreported decision issued July 7, 2010, the Court of Special Appeals summarily denied leave. (ECF No. 5-8).

Petitioner timely filed the instant application pursuant to 28 U.S.C. § 2254 on July 29, 2010, raising the following grounds:

> (1) Did appellate counsel violate Petitioner's constitutional right of effective assistance of counsel when failing to raise [the issue of a] deficient reasonable doubt instruction based upon MPJI CR 2:02?
>
> (2) Did [the] trial judge violate Petitioner's constitutional right to a fair trial by giving improper commentary to the jury[,] which alluded to an easy trial with a quick conviction?
>
> (3) Did [Petitioner's] trial attorney violate [his] constitutional right of effective assistance of counsel for failing to object to the deficient reasonable doubt instruction[,] which excluded the option of the jury finding [him] not guilty if reasonable doubt exists?

(4) Did [Petitioner's] trial attorney violate [his] constitutional right of effect assistance of counsel for failing to object to the [*nolle prosequi*] of lesser included offenses[,] which foreclosed a guilty verdict of less than [first-degree] burglary when there was sufficient evidence pointing to a possible lesser degree verdict?

(5) Did [Petitioner's] trial attorney violate [his] constitutional right of effective assistance of counsel by failing to object to commentary given to [the] jury by [the] trial judge regarding the "wrong way" to deliberate?

(6) Did [Petitioner's] trial attorney violate [his] constitutional right of effective assistance of counsel based upon the cumulative effect of errors he made?

(7) Did [the] trial judge violate Petitioner's constitution right[s] by sentencing [him] outside [the] guidelines without stating a reason for doing so?

(ECF No. 1 ¶¶ 10-17).[4]

## II.   Standard of Review

A federal court may grant habeas relief only if the state court's adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362,

---

[4] Petitioner initially argued that the trial court erred by failing to poll the jurors individually, but later withdrew that ground.  (ECF No. 7).

403-13 (2000).   Section 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *accord Bell v. Cone*, 543 U.S. 447, 455 (2005).   This standard is "difficult to meet" and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, --- U.S. ----, 131 S.Ct. 1388, 1398 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*).   "State court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)).   "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).   This bar is especially high where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id*. (quoting *Wilson v. Ozmint*, 352 F.3d 847, 858 (4th Cir. 2003)). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, --- U.S. ----, 131 S.Ct. 770,

786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).   "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's determination.'"   *Id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)).   A federal habeas court "may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."   *Renico v. Lett*, --- U.S. ----, 130 S.Ct. 1855, 1862 (2010) (quoting *Williams*, 529 U.S. at 411) (internal marks omitted).   "Rather, that application must be 'objectively unreasonable.'"   *Id.* (quoting *Williams*, 529 U.S. at 409).

## III. Analysis

### A. Ineffective Assistance of Counsel

To establish a Sixth Amendment claim of ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient," and that "the deficient performance prejudiced the defense."   *Strickland v. Washington*, 466 U.S. 668, 687 (1984).   To demonstrate inadequate or deficient

12

performance under *Strickland*, a petitioner must "show that counsel's representation fell below an objective standard of reasonableness" measured by "prevailing professional norms." *Id.* at 688. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial strategy.'" *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Elmore v. Ozmint*, 661 F.3d 783, 857 (4th Cir. 2011) (quoting *Strickland*, 466 U.S. at 690-91).

To demonstrate prejudice under *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *i.e.*, that he would have been found not guilty. *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome. It is not enough 'to show that the errors had

some conceivable effect on the outcome of the proceeding.'" *Harrington*, 131 S.Ct. at 787 (citation omitted) (quoting *Strickland*, 466 U.S. at 693-94). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 787-88 (quoting *Strickland*, 466 U.S. at 687). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state court decision applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 699 (2002). Rather, a petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id*. Thus, in the context of § 2254 review, the *Strickland* standard is "doubly deferential." *Cullen*, 131 S.Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, ----, 130 S.Ct. 1473, 1485 (2010).

### 1. The Reasonable Doubt Instruction

Petitioner faults his trial counsel for failing to object to the trial court's reasonable doubt instruction and his appellate counsel for failing to challenge the instruction on direct appeal. (ECF No. 1, at 10-13). The post-conviction court found no error, observing that the "evidence in this case is overwhelming" and ruling that the omission did not materially

affect the outcome.   (ECF No. 5-6, post-conviction hearing transcript, at 19).

During his state post-conviction hearing, Petitioner argued that the reasonable doubt instruction was deficient because it did not include the following sentence from the Maryland Criminal Pattern Jury Instructions: "However, if you are not satisfied of the Defendant's guilt to that extent, then reasonable doubt exists and the Defendant must be found not guilty." (*Id.* at 17).   While Petitioner presented no evidence or testimony in support of this claim, he asked the post-conviction court to take notice of the decision in *Ruffin v. State*, 394 Md. 355 (2006).  (*Id.* at 18).

In *Ruffin*, a case decided more than two years after Petitioner's trial, the Court of Appeals of Maryland considered a preserved challenge to a reasonable doubt instruction that omitted language from the Maryland Criminal Pattern Jury Instructions similar to the language omitted from the instruction given at Petitioner's trial. *See Ruffin*, 394 Md. at 358-59.  The court reversed Ruffin's conviction and remanded the case for a new trial, holding that, for Ruffin and all prospective cases,[5] Maryland non-constitutional law required

---

[5] Specifically, the court stated:

> Our holding in this case represents a
> change in a Maryland common law principle

trial courts to follow the Maryland Pattern Jury Instructions pertaining to reasonable doubt, without substantial deviation. *Id.* at 371, 373.

In essence, Petitioner claims that, because his trial and appellate counsel failed to predict this change in the law, they rendered constitutionally ineffective assistance.  The law is clear that "an attorney's assistance is not rendered ineffective because he failed to to anticipate a new rule of law." *Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995); *see also Honeycutt v. Mahoney*, 698 F.2d 213, 216-17 (4th Cir. 1983). Petitioner does not offer evidence to rebut the presumption that trial counsel had strategic reasons for not objecting to the reasonable doubt instruction, and he has made no showing of prejudice.  Additionally, because trial counsel did not object to the instruction and it was not preserved for direct appeal, Petitioner's appellate counsel cannot be faulted for failing to raise the unpreserved issue.  *See Smith v. Murray*, 477 U.S. 527,

> and not an overruling of prior cases on the ground that they were erroneously decided. Consequently, the defendant Ruffin is entitled to the benefit of our holding, but, otherwise, the holding shall be applied only prospectively.  In other words, today's holding "applies to the instant case[] . . . and to all [criminal] trials commencing and trials in progress on or after the date this opinion is filed."

*Ruffin*, 394 Md. at 373 n. 7 (citations omitted; alterations in original).

536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)) ("'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy"). In sum, Petitioner provides no grounds to demonstrate that the state court's adjudication was contrary to, or involved an unreasonable application of, *Strickland*, and thus shows no cause to disturb the state post-conviction court's ruling.

### 2. *Nolle Prosequi* of Lesser-Included Offenses

Petitioner next contends that his trial counsel rendered ineffective assistance by failing to object to the state's entry of *nolle prosequi* for the third and fourth-degree burglary charges against him prior to the time the first-degree burglary charge was submitted to the jury. (ECF No. 1, at 13-14). At the post-conviction hearing, Petitioner's counsel argued:

> The *Hook* case [*Hook v. State*, 315 Md. 25 (1989)] . . . is the most important [case]. And the question there is whether or not a prosecutor can *nol pros* charges that are lesser charges simply to create the all or nothing effect for the jury when the jury could, in fact, find the lesser charges. At that point the defense counsel does not have the opportunity to object. And that's what's being argued here is whether or not that's ineffective assistance of counsel for failing to object to the *nol pros*. I think it's [Petitioner's] argument that had the [third and fourth]-degree charges been left in, that in fact he could have been found guilty of one of those

17

> lesser charges and not, in fact found guilty
> of the first-degree burglary charge.

(ECF No. 5-6, at 20).   The prosecutor at the post-conviction

hearing countered that the *nolle prossed* counts were lesser-

included offenses of first-degree burglary and that "[t]he State

does not actually have to introduce all counts that are charged

to the jury.   And if they're not charged to the jury, they can

just be dismissed."   (*Id*. at 21).

In rejecting Petitioner's claim, the post-conviction court

explained:

> Well, there's very clearly discussion
> going on [at] Page 92 of the trial
> transcript between the Court, [defense
> counsel], and [the prosecutor] on that
> issue.   And I'm quoting Judge Levitz, Page
> 93, "I don't see how there could be anything
> – it's either first-degree or it's nothing."
>
> So basically what you're saying, sir,
> is you want the jury to be able to find you
> guilty of more than one type of burglary.
> The others are lesser included offenses that
> are in the first-degree burglary.   If they
> didn't prove first-degree burglary, they
> couldn't find you guilty of the underlying
> charges anyway.   Third and fourth-degree are
> out the door.
>
> And then the Judge goes on to explain
> the difference – or the reason for the
> first-degree burglary.   And you go back in
> the instructions on Page 100, he's very
> clear as to what the requirements are and
> includes all the elements of the first-
> degree burglary.   And he starts off by
> saying, quote, "Now, there's only one charge
> that I want you to consider in this case,
> just one."   So you had a better chance of

> being found not guilty on that charge in
> itself than having three charges submitted
> to the jury.
>
> [There is] [n]o evidence before this
> Court to indicate that this was not sound
> trial strategy on behalf of the trial
> attorney. There's no error. There's no
> deficit by the trial attorney or the
> appellate attorney on this issue. It's
> denied.
>
> [The] State can nol pros whatever they
> want to. It's up to them as to what they're
> going to submit to the jury.

(*Id.* at 22-23).

While not absolute, in Maryland, "'[t]he entry of a *nolle prosequi* is generally within the sole discretion of the prosecuting attorney.'" *Burrell v. State*, 340 Md. 426, 430 (1995) (quoting *Hook*, 315 Md. at 35); *see also* Md. Rule 4-247(a). The trial court may intervene only where the prosecutor's decision to enter *nolle prosequi* clearly offends a defendant's right to a fair trial. *See Burrell*, 340 Md. at 430. "'When the defendant is plainly guilty of some offense, and the evidence is legally sufficient for the trier of fact to convict him of either the greater offense or a lesser included offense, it is fundamentally unfair under Maryland common law for the State, over the defendant's objection, to *nol pros* the lesser included offense[.]'" *Id.* at 432 (quoting *Hook*, 315 Md. at 43-44).

The undisputed evidence presented at Petitioner's trial was that the victim's electronic equipment was pulled away from the wall, placed in the center of the room, and that some of it had been placed in a bag. Petitioner's defense at trial was not that the evidence showed a lack of intent to commit a crime; rather, his counsel argued misidentification. (ECF No. 12-9, at 113 (defense counsel stating during closing argument that "[t]he question in Mr. Sanders' case is whether or not he ever entered into this apartment"); *see also id.* at 114-17, 119-20). Thus, as indicated by the trial court and the prosecutor, the evidence demonstrated either that Petitioner committed first-degree burglary or that he was not guilty. (*Id.* at 92-93); *see also* Md. Code Ann., Crim. Law § 6-202 (2002) (defining first-degree burglary).

Based on the trial record, the post-conviction court determined there was no ineffective assistance for failing to object to the entry of *nolle prosequi* to the lesser-included charges. The state post-conviction court observed that the *nolle prosequi* entry served to increase Petitioner's chance of acquittal by eliminating a compromise verdict, and that this was likely a strategic choice on the part of his counsel. (ECF No. 5-6, at 22). Petitioner, moreover, presented no evidence suggesting otherwise.

The post-conviction court's determination is supported by the record.   The instant petition fails to address or rebut the presumption that counsel's conduct was within the wide range of reasonable professional assistance and consistent with sound trial strategy.   Additionally, Petitioner provides no factual or legal basis to suggest that submission of the lesser-included offenses would have resulted in a different verdict.   In sum, because Petitioner has failed to meet his burden under *Strickland*, his claim in this regard will be denied.

   **3.   Instruction on Jury Deliberations**

   Petitioner further contends that his trial counsel rendered ineffective assistance by failing to object to the trial judge's instruction to the jury concerning the "'wrong way' to deliberate."   (ECF No. 1, at 15).   At the post-conviction hearing, Petitioner's counsel argued that trial counsel's failure to object to these comments amounted to ineffective assistance because the jury could have been given the wrong impression as to how long they should deliberate, "[a]nd the prejudice there would be that . . . the jury actually was given some sort of impression of how long they should deliberate on the case, which would lead us to a verdict that would not be reliable."   (ECF No. 5-6, at 30-31).   The post-conviction court stated, "[w]ell, [the trial judge is] not indicating what the jury's verdict should be.   They could just as easily [have] been

in there for five minutes and come back with a not guilty verdict." (*Id.* at 31). The court concluded, "[i]t was not a prejudicial instruction. Petition is denied." (*Id.*).

While the substance of the trial court's parting instruction does give pause, the court remains mindful of the high degree of deference that must be afforded state court rulings on *habeas corpus* review. This issue was reviewed by the Court of Special Appeals on direct appeal, which clearly believed the instruction was imprudent, but declined to exercise its discretion to review the unpreserved issue for plain error. In Maryland appellate courts, "[p]lain error review is reserved for those errors that are compelling, extraordinary, exceptional or fundamental to assure the defendant of a fair trial." *Olson v. State*, 208 Md.App. 309, 363 (2012) (internal marks and citation omitted). By necessary implication, the intermediate appellate court found that the trial court's error did not meet this high bar. The issue was again considered, in the ineffective assistance context, by the post-conviction court, which found no prejudice, and the intermediate appellate court, which summarily denied Petitioner's leave application.

In light of the deferential standard accorded to state court determinations in § 2254 proceedings and the absence of any legal or factual argument supporting a finding of ineffective assistance, Petitioner has not met his burden of

establishing that the post-conviction court's ruling was "contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Thus, his claim in this regard will be denied.

### 4. Cumulative Effect of Errors

Petitioner asserts that the cumulative effect of his trial counsel's alleged errors amounts to constitutionally deficient representation.  Under the doctrine of cumulative error, "[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error."  *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990); *see also United States v. Martinez*, 277 F.3d 517, 532 (4th Cir. 2002) (citing *Rivera* for the same proposition); *United States v. Basham*, 561 F.3d 302, 330 (4th Cir. 2009).  Generally, if a court "determine[s] . . . that none of [a defendant's] claims warrant reversal individually," it will "decline to employ the unusual remedy of reversing for cumulative error."  *United States v. Fields*, 483 F.3d 313, 362 (5th Cir. 2007).  To reverse for cumulative error, the errors must "so fatally infect the trial that they violated the trial's fundamental fairness."  *Basham*, 561 F.3d at 330 (quoting *United*

*States v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004)).  When "[n]one of [the trial court's] individual rulings worked any cognizable harm to [the defendant's] rights . . . [i]t necessarily follows that the cumulative error doctrine finds no foothold[.]" *United States v. Sampson*, 486 F.3d 13, 51 (1st Cir. 2007).  In the Fourth Circuit, the cumulative error doctrine is not generally recognized because "legitimate cumulative-error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient." *Fisher v. Angelone*, 163 F.3d 835, 852 n. 9 (4th Cir. 1998); *see also Arnold v. Evatt*, 113 F.3d 1352, 1364 (4th Cir. 1997); *Higgs v. United States*, 711 F.Supp.2d 479, 552 (D.Md. 2010) (in the context of collateral review, relief based on the cumulative effect of errors is available only where individual constitutional errors are found).

Petitioner's claims of ineffective assistance of trial counsel were rejected by the state court, and none of them, individually, provide a basis for federal *habeas corpus* relief. Consequently, the cumulative effect of the alleged errors provides no basis for relief.

**B.   Claims of Trial Court Error**

Petitioner additionally presents two claims of error by the trial court.  First, he argues that the trial judge's statements

24

to the jury regarding its deliberative process violated his constitutional right to a fair trial. He further contends that the judge violated his constitutional rights by sentencing him above the guidelines without stating his reasons for doing so. Respondents counter that these grounds are procedurally defaulted because Petitioner did not seek review of them in the Court of Appeals of Maryland. The court agrees.

Absent a valid excuse, a § 2254 petitioner "must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 277-78 (1971)). The petitioner has the burden of proving exhaustion of state court remedies as to each claim presented for federal habeas relief. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (internal citations omitted). If a state court "clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id*. (citing *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). A state court's application of a procedural bar is a finding of fact entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(d); *Stockton v. Murray*, 41 F.3d 920, 924 (4th Cir. 1994). A federal habeas court may review the merits of a procedurally

defaulted claim only if a petitioner (1) demonstrates cause for the default and resulting prejudice or (2) makes a colorable showing of actual innocence. *Breard*, 134 F.3d at 620.

While Petitioner did raise his claim regarding the jury instruction in the Court of Special Appeals, he did not seek further review in the Court of Appeals. His remaining claim, regarding the above-guidelines sentence, was not raised by Petitioner on direct appeal or in his application for leave to appeal the denial of post-conviction relief. Thus, both claims are procedurally defaulted. Because Petitioner has made no showing of cause for his procedural default, nor has he shown that any prejudice or miscarriage of justice will result if these claims are not reviewed, consideration is precluded in this court.[6]

## IV. Conclusion

For the foregoing reasons, the petition for a writ of *habeas corpus* will be denied. Because there has been no substantial showing of a denial of Petitioner's constitutional

---

[6] Petitioner's sentencing challenge is, in any event, patently meritless. Petitioner asserted at sentencing, "I'm going to do the time, whether it's 13 years or 20 or whatever – I'm going to get out and break the law. I know I am going to do that. There ain't no question about that." (ECF No. 12-10, at 8). The court then stated its reason for imposing the maximum sentence: "My interest in this case is, quite frankly, to keep Mr. Sanders locked up for as long as I can . . . so he's not out burglarizing other people's houses." (*Id.* at 10). Thus, the court clearly stated the basis for imposition of the maximum sentence.

rights, a certificate of appealability will not issue.  *See* 28
U.S.C. § 2253(c)(2).  A separate order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge